James C. PATTERSON and Sheryl J. Patterson, Appellants–Defendants,

v.

Laura GRACE, Appellee–Plaintiff.

No. 46A03–9504–CV–128.

Court of Appeals of Indiana.

Feb. 15, 1996.

J. Douglas Angel, Katz, Brenman & Angel, Merrillville, for Appellants.

David P. Jones, Newby, Lewis, Kaminski & Jones, LaPorte, for Appellee.

## OPINION

GARRARD, Judge.

James C. Patterson and Sheryl J. Patterson (collectively "Pattersons") appeal from the trial court's judgment of foreclosure on certain real property located in LaPorte County, Indiana. Although the Pattersons agree with the trial court's conclusion that an equitable mortgage existed between them and Laura M. Grace ("Grace"), they contend that the trial court erroneously reversed the status and rights of the parties. Both parties argue that various errors necessitate reversal.

## FACTS

In 1981, the Pattersons purchased the real property at issue here and procured a mortgage through Household Finance. In 1991, the Pattersons began experiencing financial difficulties and were unable to make timely mortgage payments. Household Finance threatened foreclosure. The Pattersons responded to an advertisement in the *Chicago Tribune* placed by William and Laura Grace soliciting the attention of financially troubled people and offering assistance for their problems. Negotiations ensued, and the Graces offered to retire the existing debt to Household Finance and enter into an agreement with the Pattersons. At this time, the balance due on the mortgage to Household Finance was approximately $149,500.00, and the fair market value of the real property and improvements was approximately $235,-000.00. Thus, the Pattersons had accrued approximately $85,500.00 in equity.

Pursuant to the parties' agreement, title to the real property was transferred to the Graces, who executed a mortgage with Valley American Bank. The Pattersons remained in possession of the property and were obligated to make monthly rental payments of $1,503.00 to the Graces. These payments were to be applied by the Graces to satisfy the monthly mortgage, property taxes, insurance, and property owners' association dues. The Graces received no profit or benefit from the monthly payments. Instead, they would collect a $5000.00 fee if the Pattersons chose to exercise their option to repurchase the property from the Graces within the allotted three year period. The record indicates that Mr. Patterson believed from conversations with Mr. Grace that he would regain ownership of the property at the close of the lease, that Mr. Grace provided assurance he would not forfeit his equity in the premises, and that the Graces entered the transaction in the manner they did to gain the mortgage deduction as a tax benefit. Not long after the parties executed their agreements, Mr. Grace died intestate.

The Pattersons remained in exclusive possession of the real estate and made regular payments to Mrs. Grace from October of 1991 until April of 1992. Thereafter, howev-

er, the Pattersons became delinquent on their payments. The record shows the Pattersons submitted two monthly payments after their due date.[1] Later checks sent by the Pattersons were returned for insufficient funds. Thus, at the time of the bench trial held on this matter, the Pattersons were 15 months delinquent on the monthly payments for a total sum of $22,545.00. The Pattersons were also delinquent on an installment note for the sum of $8,838.49, which represented monies loaned by the Graces to satisfy certain debts necessary to insure "closing" on the real property. A balance of $6,641.99 remained due on the installment note.

In July, 1993, Grace sent by certified mail a "notice to quit" to the Pattersons.[2] On August 9, 1993, Grace filed her complaint requesting that the Pattersons be ejected from the property, that the court foreclose any rights the Pattersons may have pursuant to the option to purchase the real estate, and alleging that they had breached the installment note by failure to pay. A bench trial was held on August 16, 1994. The trial court concluded that an equitable mortgage existed, and that the total liability of the Pattersons in the sum of $32,913.94 should be offset against their equity of $85,500.00. Thus, the court ordered the Pattersons to vacate the premises and ordered a judgment lien on the property in favor of the Pattersons be entered for $52,586.06.

### ISSUES

I. Whether the trial court erred in fashioning its judgment based upon the existence of an equitable mortgage.

    A. Whether the trial court incorrectly considered parol evidence in making its determination that the parties entered into an equitable mortgage.

    B. Whether special findings and conclusions entered by the court were clearly erroneous.

        1. Existence of an equitable mortgage.

        2. No attempt to exercise option to repurchase.

        3. Tender of past due money neither adequate nor timely.

    C. Whether the trial court erred in fashioning its remedy.

        1. Whether the Pattersons redeemed their real property.

        2. Whether the trial court erred in ordering strict foreclosure.

II. Whether the trial court erred in denying the Pattersons' motion to dismiss.

### DISCUSSION & DECISION

#### I.

■ At trial the Pattersons argued that the deed conveying the real property to the Graces was nothing more than a mortgage or security device. They recognized that in Indiana a deed, absolute and unconditional on its face, may be in fact a mortgage used to secure a debt rather than a true conveyance. *See Brenneman Mechanical v. First National Bank* (1986), Ind.App., 495 N.E.2d 233, 239, *reh'g. denied, trans. denied; Barber v. Barber* (1946), 117 Ind.App. 156, 160, 70 N.E.2d 185. The question of whether a deed absolute in form is in fact a mortgage depends upon the intention of the parties at the time of its execution. *Id.* At trial the Pattersons offered parol evidence to show that both parties intended the deed here to operate as a mortgage. The trial court agreed and found that an equitable mortgage existed between the parties.

#### A. Parol Evidence.

■ Initially, we address whether the trial court erred by considering parol evidence in making its determination that the parties here entered into an equitable mortgage rather than an absolute conveyance of land. Generally, the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding terms to a written contract where an

---

1. The rent checks for April and May of 1992 were each received a month late. Record at 100.

2. The trial court found that the notice to Mrs. Patterson, which was sent to the address agreed to in the option agreement, went unclaimed. The separate notice sent to Mr. Patterson in Tennessee was signed for by a person whose signature is not legible.

integration clause states that the written document embodies the complete agreement between the parties. *Millner v. Mumby* (1992), Ind.App., 599 N.E.2d 627, 629. Grace directs our attention to an integration clause contained in the parties' option agreement. Grace's argument that the parol evidence rule applies to the instant case, however, is not persuasive. Numerous cases in this jurisdiction have established that parol evidence may be used to show that a conveyance of land absolute on its face is in fact a mortgage. *Brenneman Mechanical,* 495 N.E.2d at 239; *Barber,* 117 Ind.App. at 160, 70 N.E.2d 185; *Matter of Willows of Coventry, Ltd. Partnership* (Bkrtcy.N.D.Ind.1993), 154 B.R. 959, 963. Thus, we find no error here.

**B. Court's Special Findings and Conclusions.**

The trial court entered special findings and conclusions pursuant to the Pattersons' request under Ind. Trial Rule 52(A). On appeal, both parties challenge the findings and conclusions entered by the trial court. We address their arguments separately.

Upon review of a judgment supported by special findings and conclusions, this court applies a two-tiered standard: we first determine whether the evidence supports the findings and we then determine whether the findings support the judgment. *Parke State Bank v. Akers* (1995), Ind.App., 645 N.E.2d 1096, 1098. Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. Findings are clearly erroneous if the record lacks any facts or reasonable inferences to support them. A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. In making our determination we neither reweigh evidence nor judge witness credibility. *Id.*

**1. Equitable Mortgage.**

On appeal Grace argues that the evidence is insufficient for the trial court to determine that a mortgage relationship existed. When the conveyance of a deed is made as security for the payment of money and is held as collateral security, an equitable mortgage is created. *Willig v. Dowell* (1993),
Ind.App., 625 N.E.2d 476, 484, *vacated in part on other grounds,* 627 N.E.2d 1365 (1994), *trans. denied.* Moreover, the law gives effect to the intention of the parties rather than being controlled by the form or name of the instrument. *Brenneman Mechanical,* 495 N.E.2d at 239. The parties' intention is a question of fact for the jury or court to determine, and this court will not substitute its judgment for that of the fact finder so long as sufficient evidence supports the fact finder's conclusion.

Indiana courts have looked to various factors in ascertaining the intent to create an equitable mortgage, including: (1) the existence of a debt prior to the transaction or one created as part of the transaction, (2) documents that provide the grantor can redeem the property by performing certain conditions within a certain time, (3) the grantee gave inadequate consideration for the conveyance of the real property, (4) the grantor paid interest to the grantee, (5) the grantor retained possession, control, and use of the property, particularly when no rent was paid, (6) the grantor made improvements that a tenant would not likely make, (7) the grantee did not exercise ownership or control over the property, and (8) the parties did not intend to extinguish a debt. *Id.; Silverstein v. Central Furniture Co., Inc.* (1959), 131 Ind.App. 170, 182, 162 N.E.2d 690; and *Barber,* 117 Ind.App. at 161, 70 N.E.2d 185.

After reviewing these factors, we find sufficient evidence to support the trial court's conclusion that the parties here entered into an equitable mortgage rather than a conveyance of land. First, we note that the Pattersons have remained in exclusive possession of the real property and could exercise an option to "repurchase" the property within three years if they were not in default on the lease agreement. The purchase price fixed in the option agreement would be "the then outstanding indebtedness on the Property plus an additional amount equal to Five Thousand and No/100 Dollars." Record at 93. The outstanding indebtedness decreased with each payment the Pattersons made to Grace, as the payments were applied to Grace's mortgage with Valley American Bank. These payments resulted in no profit

to Grace. We also recognize that no money or consideration was tendered by the Graces to the Pattersons for the $85,000.00 in equity. Moreover, Mr. Patterson believed that he would regain ownership of the property at the close of the lease, that he would not forfeit his equity in the property, and that the Graces entered the transaction in the manner they did to gain the mortgage deduction as a tax benefit. Finally, the Pattersons made numerous improvements to the property that a tenant would not likely make.[3] These findings, which are supported by evidence in the record, are sufficient to sustain the trial court's conclusion that an equitable mortgage existed.

### 2. Option to Repurchase.

Next, the Pattersons challenge the trial court's finding that they did not exercise or attempt to exercise their option to repurchase title to the property. The Pattersons claim that during the pendency of this action, they offered to pay all delinquent sums, the $5,000.00 option fee, and Grace's attorney fees for a total of $37,000.00 and that Grace refused the offer. Even so, the Pattersons have not shown clear error. Their proposal to Grace failed to abide by the terms of the option agreement. The purchase price provided in the agreement is the "then outstanding indebtedness on the Property" plus five thousand dollars. The Pattersons do not claim to have offered to pay the outstanding indebtedness plus five thousand dollars. Thus, the evidence is sufficient to support the trial court's judgment.

### 3. Late Payments.

The Pattersons further claim that Grace waived her right to refuse late payments by accepting prior payments tendered after their due date. They reason that Grace could not refuse their attempted tender of delinquent fees during the pendency of this action. Apparently they believe that Grace must accept payment of the overdue fees and continue in their contractual relationship under a theory of waiver. We disagree.

The general rule of waiver provides that a creditor may not ordinarily establish a pattern of accepting time payments which may be slightly late and then suddenly insist on strict compliance with time provisions and declare a forfeiture. *See Van Bibber v. Norris* (1981), 275 Ind. 555, 419 N.E.2d 115, 121. Here, the record indicates that Grace accepted two payments from the Pattersons that were each one month late. On the date of trial, the Pattersons were 15 months delinquent on the monthly lease payments for a sum total of $22,545.00. The trial court did not err in determining that the attempted tender of monies past due by the Pattersons to Grace was neither adequate nor timely.

### C. Judgment as Contrary to Law.

Additionally, the Pattersons contend that the judgment and remedy ordered by the trial court are contrary to law. First, they assert that they have the right to redeem the property by paying the debt with interest and costs before the property is sold to satisfy the judgment. Second, they argue that once the trial court has ordered foreclosure, the only remedy available is a judicial foreclosure sale. Thus, they contend the court erred in ordering them to vacate the property and in granting them a judgment lien on the property for $52,586.06.

### 1. Right of Redemption.

Indiana law grants a mortgagor the right to redeem his property by tendering the amount due with costs to the court. *Willig v. Dowell*, 625 N.E.2d at 485; *Vanjani v. Federal Land Bank of Louisville* (1983), Ind.App., 451 N.E.2d 667, 672, n. 1. A foreclosure sale cuts off the mortgagor's right of redemption. *Vanjani v. Federal Land Bank of Louisville*, 451 N.E.2d at 672, n. 1. The question presented here, then, is whether the Pattersons exercised their right to redemption of the real property at issue.

As a general rule, in order to redeem from a mortgage or to exercise the equitable right of redemption, the debt secured by the mortgage must be paid. 59 C.J.S. *Mortgages* § 848 (1949). This general

---

**3.** The Pattersons recarpeted the home, effectuated structural work to avoid sinkage of the home in lakefront sand, retiled areas of the home and repaired water damage.

rule, however, does not apply here since we find an Indiana statute controlling. I.C. § 34–1–53–8 (West 1983) provides that:

> Whenever a complaint is filed for the foreclosure of a mortgage upon which there shall be due any interest, or installment of the principal, and there are other installments not due, if the defendant pay into court the principal and interest due, with costs, at any time before final judgment, the complaint shall be dismissed; if such payment be made after final judgment, proceedings thereon shall be stayed, subject to be enforced upon a subsequent default in the payment of any installment of the principal or interest thereafter becoming due. In the final judgment, the court shall direct at what time and upon what default any subsequent execution shall issue.

The record discloses that the Pattersons posted a cash bond with the trial court after judgment in the sum of $56,961.94. This amount exceeds the principal and interest, with costs, that were determined due at that time. Pursuant to I.C. § 34–1–53–8, the trial court was required to stay the proceedings after this tender of funds, subject to being enforced upon a subsequent default by the Pattersons.

We note that many mortgages contain acceleration clauses which would render the entire mortgage debt due upon default. Under these circumstances, the debtor would have to pay the mortgage debt with costs and interest in order to redeem the property pursuant to I.C. § 34–1–53–8. Here, however, the parties have not pointed to an acceleration clause within the executed documents and we have found none. Thus, we determine that only those payments on which the Pattersons had defaulted were due at the time of trial. The Pattersons paid a sufficient sum to the court clerk to cover the amount due. We reverse the trial court's judgment and remand for entry of a final judgment in which the trial court "shall direct at what time and upon what default any subsequent execution shall issue." I.C. § 34–1–53–8.

### 2. Strict Foreclosure.

We also conclude that even if the trial court properly foreclosed on the mortgage, its judgment was contrary to law. The trial court's judgment left title to the property in Grace's name and granted the Pattersons a judgment lien on the property for $52,586.06. The trial court erred in fashioning its judgment because foreclosure must follow statutory procedure. *Ellsworth v. Homemakers Finance Service* (1981), Ind. App., 424 N.E.2d 166, 169, *reh'g. denied.* A mortgagee is not permitted to sell the mortgaged premises and apply the proceeds to satisfy the judgment; instead, the judgment of foreclosure shall order the mortgaged property sold by the sheriff. I.C. § 32–8–11–3 (West 1979); I.C. § 34–1–53–3 (West 1983); I.C. § 34–1–53–6 (West 1983). The proceeds of the sale shall be applied first to payment of the judgment, and any surplus shall be paid to the mortgagors. I.C. § 34–1–53–10 (West 1983). The trial court's foreclosure judgment would allow Grace to keep the property after paying off the lien, or to sell the property herself and retain any surplus. This she may not do.

### II.

The Pattersons' final contention is that the trial court erred in denying their motion to dismiss at trial. Shortly after the Graces and the Pattersons executed the agreements at issue in this case, Mr. Grace died intestate. No estate was ever opened for Mr. Grace, and Mrs. Grace is his sole heir. The Pattersons argue that the estate and/or personal representative of William H. Grace was a necessary party or real party in interest who Grace failed to join.

We find that the estate or personal representative of Mr. Grace was not a necessary party to the present action based upon the facts presented. Mrs. Grace, who was her husband's sole heir, was a party to this lawsuit. Moreover, no estate for Mr. Grace was ever opened. We note that our supreme court has determined that the administrators of a mortgagee who died intestate were neither necessary nor proper parties. *Westerfield v. Spencer* (1878), 61 Ind. 339, 345. In *Westerfield,* the administrators had fully set-

tled the decedent's estate. Here, no estate was ever opened. Accordingly, we find no error.

Affirmed in part; Reversed in part.

STATON and BARTEAU, JJ., concur.