John W. OVERMYER and Elizabeth Overmyer, Appellants,

v.

Ivan MEEKER, Executor of the Estate of Arthur C. Meeker, Deceased; National City Bank, Indiana, Crop Fertility Specialists, Kerlin Elevator, and Lincoln National Life Insurance Co., Appellees.

No. 91A04–9412–CV–488.

Court of Appeals of Indiana.

March 6, 1996.

---

James P. Buchanan, Buchanan & Buchanan, Lebanon, for appellants.

Donald J. Tribbett and Scott L. Starr, Starr Austen Tribbett & Myers, Logansport, for appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

John W. and Elizabeth Overmyer appeal the trial court's grant of the executor's petition to close Arthur Meeker's estate as insolvent. We affirm.

### FACTS

Many of the facts relevant to this appeal were summarized as follows in *Lincoln Nat'l Life Ins. Co. v. Overmyer*, 530 N.E.2d 784 (Ind.Ct.App.1988), *trans. denied:*

John W. and Elizabeth Overmyer originally owned the real estate which is the subject of the dispute today. They sold the real estate by land contract to Arthur C. Meeker; Meeker's obligations under this contract were never completely satisfied. Meeker sought to obtain a loan from Lincoln secured by this real estate.

In order to facilitate the loan, the Overmyers gave Meeker title to the property by general warranty deed to enable him to give Lincoln a first mortgage on the real estate. The Overmyers orally agreed, in consideration for making the conveyance, to accept $600,000.00 cash from the loan proceeds (less than the $1,050,000.00 payoff balance of their land contract). Also, unbeknownst to Lincoln, the Overmyers orally agreed to accept a second mortgage on the real estate in question or a first mortgage on certain real estate near Burnettsville owned by Meeker from Meeker to secure the unpaid balance of the land contract.

On the basis of these undisputed agreements, Meeker recorded his deed and Lincoln recorded its mortgage; Lincoln loaned Meeker $1,200,000 of which $600,000 was directly disbursed to the Overmyers. Meeker gave a second mortgage to the real estate in question to the First National Bank of Logansport and never got around to giving the Overmyers any other security for the unpaid balance of the land contract.

Meeker died. Lincoln and the Overmyers filed claims against his estate. Lincoln also filed an action to foreclose its mortgage on the real estate; its claim, principal and interest, amounted to $1,662,429.60 as of August 31, 1985. The Overmyers asserted a vendor's lien on the real estate in question based upon the unpaid balance of the original land contract which amounted

to $640,479, principal and interest. The parties stipulated the fair market value of the land was insufficient to satisfy even the principal amounts of the two loans.

Lincoln and the Overmyers filed cross motions for summary judgment. The trial court granted the Overmyers' motion and denied Lincoln's, giving the Overmyers' security interest priority over Lincoln's. Upon Lincoln's motion to correct errors, the court amended its judgment and established priority as follows:

Lincoln—first $600,000;

Overmyers—next $450,000 plus interest

Lincoln—any remaining proceeds to satisfy claim for interest

*Id.* at 785.

Lincoln appealed and we found that:

the Overmyers waived their vendor's lien *'to the extent of the mortgage made'* to *Lincoln.* The Overmyers' vendor's lien, though not lost, attached only to Meeker's equity of redemption and any surplus remaining from the proceeds of the mortgage foreclosure sale after the proceeds have been applied in discharge of Lincoln's mortgage lien.

*Id.* at 787. (Emphasis in original). Accordingly, we reversed the summary judgment in favor of the Overmyers and remanded with instructions that the trial court grant Lincoln's summary judgment motion.

On November 15, 1989, the trial court entered a "Final Judgment and Decree of Foreclosure and Sale," wherein the trial court awarded Lincoln a $2,575,387.26 judgment. The trial court further concluded as follows:

The Mortgage held by Lincoln ... shall be and is hereby foreclosed as a first and priority lien against all the Parties and the equity of redemption of all Parties and all persons claiming from, under or through any of the Parties, in and to the Real Estate, shall be and the same is foreclosed, subject to the lien of current taxes not delinquent.

(R. 138–39). On January 9, 1990, pursuant to the decree of foreclosure, the sheriff sold the farm, and Lincoln bought it for $1,300,000.00, approximately $1,275,387.26 less than Lincoln's judgment against Meeker's estate.

On March 10, 1992, the executor filed a petition for allowance of fees to the executor and to the estate's attorney, which the trial court granted that same day. On March 13, 1992, the trial court approved an agreement wherein the Overmyers were allowed a $250,000.00 claim against the estate. Subsequently, on March 17, 1992, the Overmyers requested a hearing on the trial court's grant of the executor's petition for allowance of fees. At the June 4, 1992, hearing, the Overmyers argued that their claim had priority over the claims for fees. Specifically, the Overmyers argued that they still had a vendor's lien on $80,000.00—income which the farm earned during the first growing season after Meeker's death. On June 29, 1992, the trial court denied the Overmyers' claim finding that *Lincoln v. Overmyer, supra,* had limited the Overmyers' vendor's lien to the equity of redemption and the surplus from the sheriff's sale. The trial court reasoned that because the right of redemption no longer existed and there was no surplus from the sheriff's sale, there were no assets to which the Overmyers' vendor's lien could attach. The trial court further found that the $80,000.00 became a "part of the assets of the Estate of the Decedent." (R. 70).

On April 20, 1994, the executor filed a petition to close Meeker's estate as insolvent. Thereafter, the Overmyers filed four pleadings objecting to the petition. The first pleading, which was filed on April 22, 1994, alleged that the Overmyers were entitled to a "specific lien" which, according to the Overmyers, arose from the sales contract with Meeker. The second pleading, which was filed June 24, 1994, alleged that the Overmyers had a vendor's lien on the farm's income. The third pleading, which the Overmyers filed on July 1, 1994, objected to an expenditure to National City Bank (formerly the First National Bank of Logansport) to the extent that the expenditure came from income derived from the real estate subject to the Overmyers' lien. The final pleading,

filed on September 15, 1994, alleged that the farm's rents, issues and profits were included within the equity of redemption discussed in *Lincoln, supra.* According to the Overmyers, their vendor's lien attached to those rents, issues and profits. In addition, the Overmyers filed a petition requesting the trial court to marshall assets.

The trial court conducted a hearing on the executor's petition to close the estate on September 19, 1994. At the hearing, the Overmyers wanted to question the executor; however, the estate and National City Bank argued that the Overmyers' objections to closing the estate as insolvent presented a legal issue and that the executor's testimony was unwarranted. The Overmyers conceded that the court had already heard their arguments and ruled against them on June 29, 1992. The trial court agreed with the estate and concluded that evidence was unnecessary because the Overmyers' objections presented a legal issue. On October 6, 1994, the trial court granted the estate's petition to close Meeker's estate as insolvent. The court's order provides in pertinent part as follows:

1. The Overmyers' objections to Petition to Close Estate and Accounting of Executor, Further Objection to Accounting, Petition for Executor to Account for Rents and Profits and Petition for the Court to Marshall Assets are hereby overruled and denied.

2. The $250,000.00 claim of the Overmyers allowed by the Court against the Estate of Arthur C. Meeker does not have any priority whatsoever over the claims of [other creditors], and instead constitutes nothing more than an unsecured claim.

3. Overmyer's Petition for Executor to Account for Rents and Profits and Petition for the Court to Marshall Assets are premised on their incorrect position that they are secured creditors and have specific lien rights in the cash held by the Executor. Since the Court has determined that Overmyers are unsecured creditors only, there

is no need for the Court to hear evidence on where the cash held by the Executor came from, since there is no dispute as to what is held, but only as to whom is entitled to such cash. . . .

(R. 223). It is from this order that the Overmyers appeal.

### DECISION

■ The Overmyers now argue that the "equity of redemption, to which [their] vendor's lien also attached, applies to rents, issues, and profits of mortgaged land sold on foreclosure, if the rents be considered as 'also mortgaged.' "[1] Overmyers' Brief, p. 28. In support of their argument, the Overmyers direct us to *Federal Land Bank of Louisville v. Schleeter,* 208 Ind. 9, 194 N.E. 628 (1935), (*Schleeter II* ), wherein our supreme court denied Federal Land Bank's petition for rehearing. However, the facts of the *Schleeter* cases do not support the Overmyers' contentions.

First, in *Federal Land Bank of Louisville v. Schleeter,* 208 Ind. 9, 193 N.E. 378 (1934), (*Schleeter I* ), our supreme court was asked to determine whether the trial court erred when it denied Federal Land Bank's petition for the appointment of a receiver. There was no such petition in this case. Next, in *Schleeter II,* our supreme court provided as follows:

A mortgage on the land carries with it every beneficial interest which would include the rents, issues, and profits; but if it were not so, and the rents, issues and profits were considered as mortgaged, in addition to the land, so that upon foreclosure not only the land, but the rents, issues and profits must be sold, the right of redemption applies to the latter.

*Schleeter,* 194 N.E. at 629. Here, there was no land mortgage between Meeker and the Overmyers, and the rents, issues, and profits were not considered as mortgaged. Rather, the Overmyers' had a vendor's lien which arose by implication of law in favor of them

---

1. The Overmyers acknowledge that there was no       surplus from the proceeds of the foreclosure sale.

to secure the payment of the unpaid purchase price of their farm. *See Lincoln, supra.*

Further, we have previously stated that a foreclosure sale terminates the right of redemption. *Patterson v. Grace,* 661 N.E.2d 580 (Ind.Ct.App.1996), *Vanjani v. Federal Land Bank of Louisville,* 451 N.E.2d 667, 672, n. 1 (Ind.Ct.App.1983). Therefore, the January 9, 1990, sheriff's sale terminated the Overmyers' right of redemption.[2] We find no error.

Affirmed.

RILEY and ROBERTSON, JJ., concur.

---

**2.** The Overmyers further argue as follows:

The trial court's final judgment that there was no need for the Court to hear evidence on where cash held by the Executor came from "... since the Court has determined that Overmyers are unsecured creditors only, ..." (br. supra p. 16), is reversible error *if* the court's interlocutory order that Overmyers are unsecured creditors, having no specific lien rights in cash assets of the estate, is contrary to our holding in *Lincoln Nat. Life Ins. Co. v. John W. and Elizabeth Overmyer, supra.*

The Overmyer's brief, p. 26. (Emphasis added). Because we have found that the trial court's order is not contrary to the holding of *Lincoln,* we need not address this issue.