## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 27 2016, 6:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Keith F. Medved
Wruck Paupore, PC
Dyer, Indiana

ATTORNEY FOR APPELLEE

Patrick A. Schuster
Patrick A. Schuster & Associates
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Judith Bonaventura,

*Appellant-Defendant,*

v.

Bobby Shah,

*Appellee-Plaintiff*

July 27, 2016

Court of Appeals Case No.
45A03-1601-SC-157

Appeal from the Lake Superior Court

The Honorable Michael N. Pagano, Magistrate

Trial Court Cause No.
45D09-1205-SC-1397

**Crone, Judge.**

# Case Summary

Judith Bonaventura appeals the trial court's denial of her motion to dismiss the small claims judgment entered in favor of Bobby Shah on his action for eviction against Bonaventura. The sole consolidated and restated issue for our review is whether the small claims court had subject matter jurisdiction over this action. Concluding that it did, we affirm.

# Facts and Procedural History

A necessary review of the convoluted factual history of this case follows. In August 2011, Bonaventura and Shah entered into a "Secured Loan and Leaseback Repurchase Agreement" ("Leaseback Agreement") regarding a home owned by Bonaventura located in Cedar Lake ("the Property"). Appellant's App. at 137. The Leaseback Agreement provided that Shah would lend Bonaventura $110,000. The Leaseback Agreement further provided in relevant part:

> C. Said indebtedness is evidenced by a Promissory Note ("Note") of Borrower payable to the order of Lender in the original principal amount of One Hundred Ten Thousand Dollars ($110,000.00).

> D. In order to save the Lender the cost and expense of foreclosing of the Loan, in the event of default, or breach of the terms, and as security for the Note, the Borrower has duly made, executed and delivered to the escrow certain good and sufficient Fee Simple conveyance for [the Property] to hold the deed in escrow for the purposes of this Agreement.

E. Simultaneously with the conveyance of the Property, Borrower is entering into a Lease Agreement with Lender.

*Id*. Pursuant to the Leaseback Agreement, Bonaventura agreed to pay monthly rent of $1837.22 beginning in October 2011. Failure to timely pay rent, after a ten-day grace period, was deemed a default. Any default entitled Shah to possession of the Property. The agreement provided for a lease term of thirty years.

[3] Section Twelve of the Leaseback Agreement entitled "Landlord Obligations Upon Termination of Lease by Tenant" explained,

> Upon the expiration of the term of this Lease, or upon early termination by [Bonaventura] as described herein, so long as [Bonaventura] has complied with the terms of this Lease by making all payments to [Shah] contemplated herein, [Shah] agrees to execute a warranty deed transferring fee simple title to the Premises to [Bonaventura] by notifying escrow agent that [Bonaventura] has performed [her] duties under this Agreement and the Deed should be transferred into [Bonaventura's] name.

*Id.* at 142.

[4] Section Twenty-Three of the Leaseback Agreement further clarified that,

> the Premises which is the subject of this Lease is being contemporaneously transferred to [Shah] by [Bonaventura] for the sum of One Hundred Ten Thousand Dollars ($110,000.00), which forms the basis of the Principal sum of the lease due hereunder. It is the understanding and intention of the parties to this Lease that should [Bonaventura] repay [Shah] said principal sum, together with a sum equivalent to interest thereon

amortized over 30 years at 19.99%, pursuant to the terms and conditions contained in this Lease, [Shah] will transfer the ownership of the Premises to [Bonaventura] by way of a deed. Failure to pay said sums pursuant to the terms of this Lease will result in [Shah] retaining the entire Premises in full satisfaction of the indebtedness of [Bonaventura] to [Shah].

*Id.* at 147. Accordingly, on September 2, 2011, the parties executed a document entitled "Joint Order/Court Order Escrow Agreement" whereby Bonaventura executed a warranty deed for the Property which was deposited with Shah's attorney to be held in escrow and "delivered by him to one or the other of the parties only upon the joint order of the parties, their heirs or legal representatives, or upon order of a court of law directing him to deliver the deed." *Id.* at 150.

[5] Bonaventura subsequently failed to pay her rent and, on May 16, 2012, Shah filed a small claims eviction proceeding in the Lake Superior Court. The case was set for an eviction hearing on June 13, 2012. Given the nature of the Leaseback Agreement, and because the trial court was concerned whether the eviction proceeding might be more properly characterized as a mortgage foreclosure over which the small claims court would lack subject matter jurisdiction, the court reset the matter for a hearing and requested that the parties brief the issue. Shah submitted a brief asserting that the case was a landlord-tenant eviction and not a foreclosure. Bonaventura did not submit a brief.

[6] The parties appeared for a hearing on July 5, 2012. Shah requested possession of the Property. Bonaventura stated that she had no objection to this request. Accordingly, the trial court entered an agreed eviction order to take effect on August 3, 2012. The parties also agreed that the deed held in escrow would be immediately released to Shah.

[7] Apparently, the parties later reached a settlement agreement outside of court and Shah did not enforce the July eviction order. However, in November 2012, Shah again filed a motion requesting a possession hearing alleging that Bonaventura had breached the parties' settlement agreement. The court held a hearing on December 3, 2012. The parties' respective counsel appeared on their behalf and entered into another agreed eviction order. Again, this order was never enforced because the parties later reached a settlement agreement outside of court.

[8] In May 2013, Shah filed yet another motion requesting a hearing for immediate possession, and the trial court set the matter for a hearing on June 12, 2013. On that date, the parties agreed to continue the matter because they were attempting to reach another settlement agreement. The case was reset for October 2013, but the parties failed to appear and no action was taken.

[9] Almost one year later, in April 2014, Shah filed another motion requesting a hearing for immediate possession. The trial court set the matter for a hearing on April 30, 2014. However, on that date Shah requested that the hearing be vacated stating that the parties had "engaged in negotiations which resulted in

payment of arrearages and *execution of a new lease between the parties*, obviating the need for a hearing for immediate possession of the real estate." *Id.* at 29 (emphasis added). The trial court granted Shah's request and vacated the hearing.

[10] A few months later, in October 2014, Shah filed another motion requesting a possession hearing alleging that Bonaventura had breached the parties' new lease agreement ("2014 Lease"). Shah attached a copy of the 2014 Lease, which was signed by both parties on April 30, 2014, to his motion. Unlike the prior Leaseback Agreement, the 2014 Lease did not consider any rent paid by Bonaventura as payment toward the purchase of the Property. The 2014 Lease contemplated that Bonaventura would obtain independent financing to purchase the Property from Shah for a price of $190,000 and also gave Bonaventura the right of first refusal should a third party make an offer to purchase the Property. The 2014 Lease term was for one year.

[11] When the parties' counsel appeared for the possession hearing on October 29, 2014, they entered into another agreed eviction order which was stayed by agreement until December 1, 2014. However, on November 25, 2014, Bonaventura filed an application for a temporary restraining order and complaint for preliminary injunction. The trial court denied Bonaventura's application and complaint without a hearing.

[12] The agreed eviction order was never enforced as, once again, the parties reached an accord. In March 2015, Shah filed another request for a hearing

regarding immediate possession. Following a hearing held on April 6, 2015, the trial court entered the following order:

> This matter is before the court for eviction hearing on April 6, 2015. Plaintiff (Landlord) appeared by [counsel]; Defendant (Tenant), appeared by [counsel]. Tenant requested a continuance of the hearing in order to finalize sale of the residence in question. Landlord objected.
>
> This court had earlier granted an eviction by agreement that was to go into effect on December 1, 2014. However, the parties agreed to an extension, contingent on Tenant purchasing the property back from Landlord. Tenant has failed to carry through on this promise.
>
> Tenant assures the court that the sale can be completed within the next few weeks. In light of this, the court will grant one final continuance, over Landlord's objection. The parties are cautioned in the strictest of terms that the court will grant no further continuances nor brook any further delays, barring extreme unforeseen circumstances. This matter is set for final eviction hearing on MAY 19TH, 2015 AT 9:30 A.M.

*Id.* at 19-20.

[13] Counsel for the parties appeared before the trial court on May 19, 2015, and requested that the court dismiss the case without prejudice because they had reached a settlement agreement. Bonaventura's brother, Michael, testified that he would be obtaining funds for the purchase of the property from Shah within a matter of days. Based upon that representation, Shah agreed to the dismissal. Accordingly, the trial court granted the parties' request and dismissed the case.

[14] Then on July 1, 2015, Shah filed a request for the court to reopen the case and a motion for contempt against Michael. The trial court set the matter for a hearing on August 4, 2015. Counsel appeared on that date and the court set a briefing schedule and a hearing date for October 2015. On August 31, 2015, Shah filed a request for immediate possession of the Property. During the October 5, 2015, hearing the parties agreed to an eviction order which was stayed by agreement until October 20, 2015. Michael appeared and presented a check to Shah's counsel for the purchase of the Property with the understanding that the eviction of Bonaventura would be halted and the case dismissed as long as the check cleared. The issue of Michael's contempt was held in abeyance.

[15] The check failed to clear, the agreed eviction order was enforced, and Bonaventura was removed from the property on October 20, 2015. She later filed a motion to dismiss the eviction and stay all prior orders for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1), or in the alternative a motion to correct error pursuant to Indiana Trial Rule 59, as well as a lis pendens action. Shah responded and filed a request that the lis pendens be stricken. Following a hearing held on December 1, 2015, the trial court entered findings of fact and conclusions thereon denying the motion to dismiss and striking the lis pendens. Bonaventura now appeals.

## Discussion and Decision

[16] The entirety of Bonaventura's appellate argument centers upon her assertion that the crux of this case involves the foreclosure of an equitable mortgage and, as such, the small claims court lacked subject matter jurisdiction over the

action. Therefore, she argues that all of the small claims court's orders are void and that the court should have granted her motion to dismiss. Shah responds that the small claims court unquestionably had subject matter jurisdiction because this case is an action for eviction between a landlord and tenant. We agree with Shah.

[17] Our standard of review of a grant or denial of a motion to dismiss pursuant to Trial Rule 12(B)(1) is a function of what occurred in the trial court. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind. 2001). The standard of review depends on: (1) whether the trial court resolved disputed facts; and (2) if it did, whether it conducted an evidentiary hearing or ruled on a paper record. *Id.* Where, as here, the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law and no deference is afforded to the trial court's conclusion. *Id.* In such case, our review is de novo. *Id.* Likewise, when reviewing a final judgment, we review all conclusions of law de novo. *Ind. Dep't of Ins. v. Everhart,* 960 N.E.2d 129, 133 (Ind. 2012).

[18] Our supreme court has clarified that "'[t]he question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs.'" *K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006) (quoting *Troxel v. Troxel*, 737 N.E.2d 745, 749 (Ind. 2000)). "A tribunal receives subject matter jurisdiction over a class of cases only from the constitution or from statutes." *Georgetown Bd. of Zoning Appeals v. Keele*, 743 N.E.2d 301, 303 (Ind. Ct. App. 2001). "When a court lacks subject matter jurisdiction, its actions are *void ab initio* and have no effect whatsoever."

*In re Adoption of L.T.*, 9 N.E.3d 172, 175 (Ind. Ct. App. 2014). "Subject matter jurisdiction cannot be waived or conferred by agreement and can be raised at any time." *Id.*

[19] Indiana Code Section 33-29-2-4(b)(2) provides that the small claims docket has jurisdiction over "[p]ossessory actions between landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000)." At the time Shah filed his action for eviction against Bonaventura in the small claims division of the Lake Superior Court, he claimed that the rent due and in arrears totaled $3674.44. Although Bonaventura urges us to consider whether the nature of the original Leaseback Agreement between the parties satisfies the elements of an equitable mortgage such that this matter requires foreclosure proceedings outside the subject matter jurisdiction of the small claims court, we need not do so.[1] Regardless of the nature of the Leaseback Agreement, we agree with the trial court that the parties made numerous agreements both in and out of open court "which changed the nature of the parties' business relationship from one of potential mortgagee and

---

[1] Indiana courts "may find an equitable mortgage where a deed, absolute on its face, is executed simultaneously with an agreement under which the grantor is entitled to reconveyance upon the performance of conditions." *Moore v. Linville*, 170 Ind. App. 429, 434, 352 N.E. 846, 849 (1976). In such cases, "the law gives effect to the intention of the parties rather than being controlled by the form or name of the instrument." *Patterson v. Grace*, 661 N.E.2d 580, 584 (Ind. Ct. App. 1996). Courts look to various factors in ascertaining the parties' intent to create an equitable mortgage including: (1) the existence of a debt prior to the transaction or one created as part of the transaction; (2) documents that provide the grantor can redeem the property by performing certain conditions within a certain time; (3) the grantee gave inadequate consideration for the conveyance of the real property; (4) the grantor paid interest to the grantee; (5) the grantor retained possession, control, and use of the property, particularly when no rent was paid; (6) the grantor made improvements that a tenant would not likely make; (7) the grantee did not exercise ownership or control over the property; and (8) the parties did not intend to extinguish a debt. *Id.*

mortgagor to one unequivocally of landlord and tenant." Appellant's App. at 33.

[20]     It is undisputed that, before even a single order was issued by the trial court, Bonaventura wholly and voluntarily surrendered title to the Property to Shah in open court on July 5, 2012. She subsequently entered into a settlement agreement which included executing the 2014 Lease, which is clearly a lease on the Property and not a mortgage. Moreover, Bonaventura entered into an agreed possession order in open court on October 5, 2015, and executed that agreement by delivering actual possession of the Property to Shah. In short, over a period of three and a half years and during countless hearings before the trial court where she was represented by counsel, Bonaventura agreed repeatedly that she was not the owner of the property, that she was the tenant and Shah the landlord, that she defaulted on the terms of numerous agreements, that she was not entitled to possession of the property, and that she agreed to being evicted. Thus, even if the original Leaseback Agreement could be construed as a mortgage (which we do not think it can based upon the intent of the parties), Bonaventura has, by her own actions and subsequent agreements, changed the nature of this case from possible mortgagor-mortgagee to one unequivocally of landlord-tenant. Accordingly, the small claims court had subject matter jurisdiction over the eviction action.

[21]     Having concluded that the eviction action was properly before the small claims court, we turn to Bonaventura's remaining assertion that the small claims court did not and does not "have the necessary jurisdiction" to address her alleged

"substantial residual equity" in the Property because such damages would exceed the $6000 jurisdictional limit for small claims actions. Reply Br. at 5, 8. First, we note that this Court has held that "the fact that a party's damages may be larger than the jurisdictional limit does not prohibit a small claims court from having jurisdiction to decide the case." *Hoang v. Jamestown Homes, Inc.*, 768 N.E.2d 1029, 1035 (Ind. Ct. App. 2002), *trans. denied*. More significantly, the small claims court here has not been called upon to assess any damages in this case. The court has been called upon simply to make a judicial determination as to possession of the Property and it has done so. As the trial court specifically observed,

> The issue of damages remains outstanding. At request of either party, this matter will be scheduled for a damages hearing. However, the court acknowledges that damages may exceed the small claims jurisdictional limit of $6,000.00. Moreover, [Bonaventura] may still attempt to claim a right to monies via any right to equity in the property she may have had prior to her surrender of the title and her execution of the 2014 Lease. In light of these potential issues, the court may entertain a motion to transfer to a court of general jurisdiction, by either party, as to the issue of damages.

Appellant's App. 38. We think that this is a logical and prudent approach by the trial court going forward.

[22] In sum, we conclude that the trial court did not err in denying Bonaventura's motion to dismiss for lack of subject matter jurisdiction. We affirm the judgment of the trial court in all respects.

[23]     Affirmed.

Najam, J., and Robb, J., concur.