## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 20 2017, 5:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Karen A. Wyle
Bloomington, Indiana

Paul J. Watts
Watts Law Office
Spencer, Indiana

ATTORNEY FOR APPELLEE

Joseph L. Verkamp
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald A. Schwartz,

*Appellant-Defendant/Counterclaimant,*

v.

Shanna L. Wyatt,

*Appellee-Plaintiff/Counterclaim Defendant*

September 20, 2017

Court of Appeals Case No.
19A01-1610-PL-2355

Appeal from the Dubois Circuit Court

The Honorable William E. Weikert, Judge

Trial Court Cause No.
19C01-1401-PL-16

**Crone, Judge.**

# Case Summary

[1] Ronald A. Schwartz was experiencing financial difficulties and asked Shanna L. Wyatt to help him out. He granted her a power of attorney, and she lent him money and began to put his financial affairs in order. She later moved in with him and paid for renovations to his home. Schwartz executed promissory notes for Wyatt's loans, as well as deeds that gave Wyatt an interest in his property as security for those loans. Their relationship soured, and Wyatt obtained a protective order against Schwartz. She later filed a complaint for partition of the property and payment of the promissory notes. After a bench trial, the court granted Wyatt's request for partition, awarded her possession of the property pending its sale, and ordered Schwartz to pay his outstanding obligations to Wyatt from his share of the sale proceeds.

[2] On appeal, Schwartz argues that the trial court erred in not finding that Wyatt breached a fiduciary duty to him, in calculating her damages, in granting her request for partition, and in awarding her possession of the property. He also argues that two of the deeds should be declared void. We conclude that Wyatt did not breach a fiduciary to Schwartz; that remand is appropriate to consider Schwartz's repayment to Wyatt in calculating her damages; that the trial court erred in granting Wyatt's request for partition but did not err in awarding her possession of the property; and that the relevant deeds should be declared void. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

[3] The relevant facts most favorable to the trial court's judgment are as follows. Wyatt's husband died in a traffic accident in 2004, and she received a "substantial" wrongful death settlement. Appealed Order at 3. Wyatt met Schwartz in January 2010. Wyatt worked at a credit union, and Schwartz was a self-employed long-distance truck driver. In February 2010, Schwartz approached Wyatt and "request[ed] assistance in meeting his financial obligations." *Id*. at 14. At that time, his net income was insufficient to meet his minimum monthly "credit card, consumer and mortgage indebtedness." *Id*. at 13. In March 2010, Wyatt lent $40,000 to Schwartz, who executed a promissory note with an annual interest rate of 6% plus additional interest, collection costs, and attorney's fees in the event of default. Schwartz also granted Wyatt a power of attorney. Later that month, as security for the promissory note, Schwartz executed deeds conveying his real property (a two-acre tract with a mobile home and a 24.63-acre tract with his residence and shop) to himself and Wyatt as joint tenants with right of survivorship. Schwartz's residence was encumbered by two mortgages; that same month, Wyatt made three payments on the first mortgage and two payments on the second mortgage.

[4] Later that year, Schwartz told Wyatt "that he would pay her if she would work for him arranging cargo shipments and maintaining his records." *Id*. at 4. Wyatt agreed to do so and stopped working at the credit union. Among other duties, Wyatt maintained Schwartz's "business records, tracked fuel costs, tolls,

parts, overnight accommodations, invoiced fares, receipted income and prepared tax records." *Id.* She also found loads for Schwartz's trucking operation, thereby eliminating brokerage fees, negotiated a substantial reduction in Schwartz's $107,000 credit card debt, and paid off the remaining credit card balance in four months. Wyatt also paid over $20,000 of Schwartz's personal debts to relatives and others. As a result of Wyatt's efforts and financial assistance, Schwartz's business went from operating at a $2400 net loss in 2010 (excluding credit card debt forgiveness, which Schwartz reported as income on his taxes that year) to posting a $56,000 net profit in 2013.

[5] Schwartz did not pay Wyatt for her services, but in September 2010 he agreed to make monthly payments on a Chevrolet Tahoe for her as a birthday present. In November 2010, Wyatt moved into Schwartz's home and rented out her home. Late in 2011, Schwartz consulted with two construction companies about remodeling his home. He hired one of them to perform the work, which cost $168,557. Wyatt paid $158,557, and her grandmother, who moved into the home, paid $10,000.

[6] Wyatt had an $81,000 home equity line of credit that she used to pay Schwartz's personal and business expenses. When she reached her credit limit, Schwartz executed a second promissory note for that amount in February 2013. This note had an annual interest rate of 4.25% plus additional interest, acceleration of the balance, collection costs, and attorney's fees in the event of default. In April 2013, Schwartz and Wyatt executed deeds granting Schwartz an undivided 25% interest and Wyatt an undivided 75% interest in the two

properties mentioned above as tenants in common without a right of survivorship.

[7] The couple's relationship deteriorated. In December 2013, Wyatt petitioned for a protective order, alleging that Schwartz threatened to burn their home. Wyatt was granted a protective order and possession of the 24.63-acre tract, home, and shop, and she was ordered to pay both mortgages and the utilities. Schwartz was granted possession of the two-acre tract and mobile home.

[8] In January 2014, Wyatt filed a complaint against Schwartz seeking partition of the real estate and payment of the promissory notes. Schwartz asserted a counterclaim for actual fraud, alleging that Wyatt falsely promised to nullify the first promissory note if he signed the second note. A bench trial was held over several days from April 2015 through January 2016. In September 2015, Schwartz filed a motion to amend his counterclaim in which he alleged that the second promissory note was "void due to [Wyatt's] breach of her fiduciary duty[.]" Appellant's App. Vol. 2 at 57. The trial court never ruled on that motion.

[9] The court asked the parties to submit proposed findings and conclusions, and the court ultimately adopted Wyatt's submission almost verbatim in a nineteen-page judgment issued in September 2016. In relevant part, the trial court found that Wyatt had used her credit card to buy business and personal items for Schwartz and had given him cash advances, all of which totaled $153,098.33; that Schwartz had repaid $74,984.19 to Wyatt but still owed over $96,000,

including interest, on the second promissory note; that from 2010 to 2013 Wyatt had spent $90,714 on household expenses, for which she was not seeking reimbursement; that "[t]he benefits in [the] relationship flowed from [Wyatt] to [Schwartz] and as such there was no fiduciary relationship in which it can be said that [Wyatt] was the dominant party and [Schwartz] a subordinate party"; that all transactions between the parties were at arm's length and primarily for Schwartz's benefit; that the evidence "demonstrates by clear, convincing unequivocal proof that [Wyatt] did not exercise undue influence over [Schwartz]"; that Schwartz failed to prove that Wyatt committed actual fraud; that all claims against the real estate were either mortgages or liens; that Wyatt was not entitled to judgment on the first promissory note because it had either been paid in full or was included in the second note; and that Wyatt was entitled to attorney's fees for her collection efforts on the second note. Appealed Order at 9, 15.

[10]   The court granted Wyatt's request for partition and ordered the sale of both tracts of real estate and the home for a list price of $397,400, with the property to be auctioned for a minimum of $225,000 if no acceptable offers were received. The court allowed Wyatt to reside in the home pending the sale. The court also ordered Schwartz to reimburse Wyatt $108,557 from his share of the equity for the home improvements,[1] $96,738.45 for the balance due on the second promissory note, and $5119.05 for attorney's fees associated with the

---

[1] Wyatt's grandmother paid $800 per month in rent to live in the home, and the court ordered any payments received after January 2016 to be deducted from Wyatt's claim for $108,557.

collection of the note. If the equity is insufficient to reimburse Wyatt, then the outstanding balance shall be reduced to judgment. The sale is to be free and clear of Wyatt's lien, unless Schwartz is the purchaser, in which case it continues against him until paid. "[U]pon satisfaction of all judgments, [Wyatt] shall convey her interest in the real estate to [Schwartz]." *Id*. at 18.

[11]  Schwartz now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[12]  Schwartz contends that the trial court's judgment is erroneous in several respects. As neither party requested specific findings and conclusions by written motion, we treat the trial court's entry of findings and conclusions as sua sponte. *Estate of Collins v. McKinney*, 936 N.E.2d 252, 259 (Ind. Ct. App. 2010), *trans. denied* (2011).

> Sua sponte findings only control issues that they cover, while a general judgment standard applies to issues upon which there are no findings. We may affirm a general judgment with findings on any legal theory supported by the evidence. As for any findings that have been made, they will be set aside only if they are clearly erroneous. A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference.

*Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013) (citations omitted). "[W]e must give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and must consider only the evidence most favorable to the judgment along with all reasonable

inferences drawn in favor of the judgment." *Stone v. Stone*, 991 N.E.2d 992, 999 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666.

[13] "It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record." *Id*. at 998. Although wholesale adoption of a party's findings is not prohibited, we do not encourage this practice because it weakens our confidence that the findings are the result of considered judgment by the trial court. *Carpenter v. Carpenter*, 891 N.E.2d 587, 592 (Ind. Ct. App. 2008).[2] We do not alter our standard of review in such situations, but near verbatim reproductions of a party's findings "may appropriately justify cautious appellate scrutiny." *Id*. at 593 (citation omitted).

## Section 1 – The trial court did not clearly err in concluding that Wyatt's transactions were conducted at arm's length and primarily for Schwartz's benefit and that she did not exert undue influence over Schwartz.

[14] Schwartz contends that Wyatt owed him a fiduciary duty as his attorney in fact and agent and that she breached her duty "in [m]ultiple [r]espects." Appellant's Br. at 24. It is true, as Schwartz observes, that a power of attorney creates a

---

[2] Schwartz opines that "[o]ne might reasonably question whether this practice is appropriate when the case turns on whether the party drafting the findings has violated the obligations of a fiduciary." Appellant's Br. at 24 n.22. Given that Schwartz himself was found to have defaulted on a promissory note, his self-righteousness is not well taken. Our supreme court has acknowledged that the practice of adopting a party's findings "is a practical response to the need to keep the docket moving despite an enormous volume of cases and a lack of law clerks and other resources that might make the practice unnecessary." *Ind. Dep't of Ins. v. Everhart*, 960 N.E.2d 129, 140 n.7 (Ind. 2012).

fiduciary relationship as a matter of law. *Scribner v. Gibbs*, 953 N.E.2d 475, 484 (Ind. Ct. App. 2011). Also, a fiduciary relationship exists between a principal and agent, *McKibben v. Hughes*, 23 N.E.3d 819, 827 (Ind. Ct. App. 2014), *trans. denied* (2015), and Wyatt undeniably acted as Schwartz's agent on many occasions. Thus, we must agree with Schwartz that the trial court erred in concluding that no fiduciary relationship existed. We find this error to be harmless, however.

[15] Notwithstanding its finding that no fiduciary relationship existed, the trial court also found that all transactions between the parties were at arm's length and primarily for Schwartz's benefit and that Wyatt presented clear and convincing evidence that she did not exercise undue influence over Schwartz. Schwartz argues otherwise. Assuming, without deciding, that Schwartz properly raised a counterclaim for breach of fiduciary duty below,[3] we find no merit in it.

---

[3] Schwartz did not assert a counterclaim for breach of fiduciary duty in his answer to Wyatt's complaint. The phrase "fiduciary duty" appears on only one page of the four-volume trial transcript. Tr. Vol. 2 at 70. In his motion to amend counterclaim, which was never ruled on, Schwartz alleged that the second promissory note was void "due to [Wyatt's] breach of her fiduciary duty[,]" but he failed to allege, even in general terms, what that breach might have been. Appellant's App. Vol. 2 at 57. The first coherent mention of a breach appears in Schwartz's posttrial findings and conclusions. Appellant's App. Vol. 3 at 40-41. Notwithstanding the vagueness and belatedness of Schwartz's fiduciary duty counterclaim, we choose to exercise our discretion to address the merits of Schwartz's argument. *Cf. Bunch v. State*, 778 N.E.2d 1285, 1287 (Ind. 2002) (acknowledging "doctrine of judicial administration whereby appellate courts may sua sponte find an issue foreclosed under a variety of circumstances in which a party has failed to take the necessary steps to preserve the issue."). In his brief, Schwartz also raises the issue of constructive fraud, a phrase which appears nowhere else in the record before us. Schwartz's posttrial findings and conclusions mention fraud in the context of fiduciary duty, which could be interpreted as a reference to constructive fraud, *see McKibben v. Hughes*, 23 N.E.3d 819, 826 (Ind. Ct. App. 2014), *trans. denied* (2015), but this was much too late to alert Wyatt and the trial court to the issue. Consequently, we find it waived.

[16] We have stated that where a fiduciary "benefits from a questioned transaction, a presumption of undue influence arises and the fiduciary bears the burden of rebutting that presumption." *Scribner*, 953 N.E.2d at 484. "The presumption may be rebutted by clear and convincing evidence that the fiduciary acted in good faith, did not take advantage of the position of trust, and that the transaction was fair and equitable." *Id*. Schwartz contends that Wyatt benefited from certain transactions, especially the remodeling of their shared residence,[4] and thus Wyatt bore the burden of rebutting the presumption of undue influence. He states that "[n]othing beyond Wyatt's unsubstantiated and self-serving statements and summaries underlie the Judgment's crucial conclusions that all transactions between Wyatt and Schwartz were at arm's length and primarily for Schwartz's benefit[,]" and he argues that this evidence cannot be considered clear and convincing. Appellant's Br. at 29.

[17] We disagree. Wyatt testified that her typewritten and computer-generated summaries of income, debts, expenses, loans, and payments were based on over 1300 documents that she provided to Schwartz in discovery, which his own accountant reviewed in performing a forensic audit of the parties' financial

---

[4] Wyatt argues that "[t]he agreement to remodel the residence was not a principal-agent transaction." Appellee's Br. at 21. For purposes of this discussion, we presume that it was.

relationship.[5] Both Wyatt and the accountant, as well as Schwartz, were examined and cross-examined extensively regarding that relationship, and the trial court found Wyatt's version of events to be the most credible. We may not reassess that determination on appeal, and therefore we affirm on this issue.

## Section 2 – Remand is appropriate to consider Schwartz's repayment to Wyatt in calculating Wyatt's damages.

As stated above, the trial court found that Schwartz repaid $74,984.19 to Wyatt. Schwartz argues that the court "did not take this figure into account in any way in the Judgment." *Id*. at 31. If the trial court did account for the repayment, the judgment does not specify how. Accordingly, we remand for consideration of this issue.

## Section 3 – The trial court clearly erred in granting Wyatt's request for partition.

The trial court made the following finding and conclusion regarding the parties' deeds:

> 73. In order to secure payment of the original $40,000 promissory note and other cash and credit card advances, [Schwartz] conveyed to [Wyatt] on March 30, 2010 a joint

---

[5] In his notice of appeal, Schwartz asked the court reporter to transcribe the trial and file the transcript and exhibits with the trial court clerk. The transcript and exhibits were not submitted to the clerk of this Court, however, and we requested them via separate orders. Schwartz complains that Wyatt's summaries were prepared in anticipation of litigation and lacked accompanying documentation, yet his forensic audit was also prepared in anticipation of litigation and was based on many (if not all) of the same sources. The trial court was aware of these considerations and weighed the evidence as it saw fit. We may not reweigh it on appeal.

undivided interest with right of survivorship in his residence and real estate of 26.63 acres.

….

22. All claims that exist against the subject real estate are either mortgages or claims which existed prior to the first set of deeds of March 3, 2010, and were liens against the real estate at the time of this first set of deeds, or were claims that became liens against the real estate after the first set of deeds (3-30-10) and before the second set of deeds (4-11-13). The second set of deeds play[s] no role in the court's decision.

Appealed Order at 10, 16.

[20] Schwartz notes that "in Indiana a deed, absolute and unconditional on its face, may be in fact a mortgage used to secure a debt rather than a true conveyance." *Patterson v. Grace*, 661 N.E.2d 580, 583 (Ind. Ct. App. 1996). "The question of whether a deed absolute in form is in fact a mortgage depends upon the intention of the parties at the time of its execution." *Id*. Schwartz also notes that Indiana Code Section 32-17-4-1 governs who may compel partition of land, and he presumes that Wyatt sought to do so as a "person that holds an interest in the land as a joint tenant or tenant-in-common … in the person's own right[.]" Ind. Code § 32-17-4-1(a)(1)(A). Schwartz argues that Wyatt's "true position is that of a mortgagee rather than either type of tenant" and that, "[p]er the terms of the statute, Wyatt is not entitled to seek partition of the property at issue." Appellant's Br. at 32.

[21]    Wyatt does not dispute her characterization as a mortgagee[6] and simply notes that partition and foreclosure are both equitable proceedings. This begs the question of whether partition is appropriate here, and we agree with Schwartz that it is not. *See Scottish Rite of Indpls. Found., Inc. v. Adams*, 834 N.E.2d 1024, 1027 (Ind. Ct. App. 2005) (holding that life tenant could not force partition and sale of fee simple interest in property, which would "allow her to convey a greater interest than she actually owns."). Therefore, we reverse and remand with instructions to deny Wyatt's request for partition and amend the judgment accordingly. Nothing in our decision should be construed as prohibiting foreclosure from being pursued as a potential remedy on remand.

## Section 4 – The trial court did not clearly err in leaving Wyatt in possession of the 24.63-acre tract.

[22]    As mentioned above, when the trial court granted Wyatt's petition for a protective order, it awarded her possession of the residence and shop on the 24.63-acre tract. Schwartz filed a motion to reconsider and requested temporary possession of the shop, which the trial court denied on the basis that it was "too close to the marital residence to allow the wife to be in the marital residence and the husband to be in the 'shed' [i.e., shop]. This would be an invitation to too many ongoing problems between the two parties." Appellant's App. Vol. 2 at 52.

---

[6] At trial, Wyatt acknowledged that the deeds were executed to secure her loans to Schwartz. Tr. Vol. 1 at 37.

Schwartz now asserts that "Wyatt's possession was evidently issued under the misapprehension that [she] and Schwartz were or had been married and that the house was marital property" and that Wyatt "grounded her claim to possession on the fact that the second set of deeds gave her a 75% interest in the residence." Appellant's Br. at 33. He notes that the trial court "explicitly declined to base any aspect of the Judgment on that second set of deeds" and that "[t]he parties cannot amicably share the residence at this point[,]" and he argues that "[i]t would therefore be more reasonable and equitable for Schwartz, the longtime owner of the property itself as opposed to a security interest therein, for whom the property holds precious familial associations, and whose business requires regular access to the shop on that property, to regain possession." *Id*.

Wyatt points out that the initial award of possession was authorized by statute notwithstanding their marital status. *See* Ind. Code § 34-26-5-9 (providing that a court may "[r]emove and exclude a respondent from the residence of a [protective order] petitioner, regardless of the ownership of the residence."). Also, Schwartz testified at the protective order hearing that he did not want to stay in the residence at that time. Wyatt spent over $150,000 to remodel the residence, has lived there with her elderly grandmother for several years, and maintains a valuable security interest therein. Under these circumstances, we

cannot say that the trial court clearly erred in leaving Wyatt in possession of the property.[7]

## Section 5 – Because the trial court essentially treated the 2013 deeds as void, and neither party objects, it shall declare them void on remand.

[25] Schwartz observes that "the trial court explicitly declined to base any action on the second set of deeds executed in 2013" and asserts that the court essentially "treated these deeds as void." Appellant's Br. at 34. He posits that "[i]n order that the title records may reflect that determination, this Court should declare the 2013 deeds null and void." *Id.* Wyatt does not object or otherwise respond to this request in her brief. We see no reason to deny this request and therefore direct the trial court on remand to declare the 2013 deeds void.

[26] Affirmed in part, reversed in part, and remanded.

Baker, J., and Barnes, J., concur.

---

[7] Schwartz does not argue that he should be allowed to use the shop if he is not given possession of the residence.